Good morning, Your Honors, and may it please the Court, Max Van Zyl on behalf of Appellant Karas. If I may, I'd like to reserve two minutes for rebuttal. California's good time credit statute creates a liberty interest protected by the 14th Amendment. That conclusion is the result of a straightforward application of precedent. In Wolf v. McDonnell, the Supreme Court ruled that good time credits are a protected liberty interest under the Due Process Clause and ruled that a very similar state statute to California's today created such an interest. California's statute creates a legitimate claim of entitlement to good time credits because prisoners accrue those credits automatically based on their sentence. There's no discretion on the part of state officials in how those credits are granted nor how they can be revoked. Moreover, good time credits are a form of liberty because they implicate one's release date from prison. That means that procedural protections must be accorded before those credits are revoked, but Mr. Karas didn't receive adequate constitutional protection. Instead, CDCR lowered his credit rate without the protection the Constitution promises. So, could I just stop you there? So I think you have a very strong argument about everything you just said, but accept that last point. So the idea that they lowered his rate or took away some credits, I'm having trouble figuring out what the basis for that is. So I understand that the sentencing court said something about the rate, but I can't tell if actually he ever got credits according to that rate because it seems like maybe the sentencing court said that without authority to say it. CDCR revoked a credit rate because the credit rate is the function of the sentence. So the sentencing court gave Mr. Karas the right to earn credits without the application of Section 2933.1 of the California Penal Code being applied to him. He really possessed that interest. He earned credits without that limitation being applied. So you say he earned those credits, but is there anything in the complaint that actually alleges that or anything in the record that shows us that he actually earned them as opposed to just the sentencing court saying it and then it never happened? We can see on the abstract of judgment on page 21 of the excerpts of record, it's also in the defendant's motion for judicial notice that Mr. Karas did earn 150 days of pre-sentence credit on 300 days of pre-sentence time served. But that's pre-sentence, so isn't the issue here the post-sentence time? But post-sentence credit rate and pre-sentence credit rate both depend, they need to be consistent with each other because they both depend on application of that same statute. So when CDCR applied the credit earning limitation to Mr. Karas, they were revoking the opportunity that had been initially granted him to earn credits without that limitation being applied. Was it proper for the Superior Court to declare, at the end of sentencing, right at that very end of the sentencing, to say that the crime was not a violent crime? That was the Superior Court's decision. My question is, that's what he said, I acknowledge that, but was it, did the District Court have that responsibility? I mean, was it, was the District Court, was the Superior Court authorized to make that determination? Well, the Superior Court is authorized under Section 2900.5 of the California Penal Code in 2009 to award credits for that pre-sentence time, yes. But wasn't the trial court wrong? Our position and the position of our client, given our process, is that Mr. Karas was entitled to the credit rate he was initially granted. Now, Mr. Karas was convicted of... He was convicted, when he was convicted, he was convicted of an enhancement that resulted because there was a serious bodily injury, so that is what resulted in his sentence getting only 15% instead of 50%. So I understand, I think, your argument that he thought he got, you know, 50% because of what the trial court said, but it appears that the trial court erred in that calculation. So I think, following up on my colleague Judge Freeland, so I don't know that he was never getting the 50% from the very beginning that he went into the detention facility. So what do we do because it seems like the District Court was wrong and he knew, your argument, that he was wrong because he alleged in the complaint that he was convicted of the enhancement that resulted in serious bodily injury? Well, your Honor, because Mr. Karas initially possessed the liberty interest in question, before it can be deprived, procedural protections need to be afforded. Arguments that the result of the process would be unfavorable to him don't obviate the need to go through the procedures. When a person's been deprived of liberty or property without due process, it's no answer to say that due process would have made no difference in their case because they had no adequate defense upon the merits. It's just like if some, you know, misconduct were committed and there, you know, was a video and there were people, there was a confession and fingerprints, the state would go through the mandatory procedures before depriving them of their liberty, not do such a thing. So what do you envision here? The process that we're asking for is a hearing at which Mr. Karas receives notice that he And a hearing in which CDCR reconciles their decision with that of the trial court, which we know they didn't do. Mr. Karas' final appeal was denied at what was called the third level hearing, exhausting his administrative remedies, without the benefit of any documents from the court or clarification from the court as to what occurred here and what credit rate CDCR should be applying. Let me ask you this, does the Bureau, or whatever, the California Department of Corrections, do they have the authority to override the Superior Court? No, they don't because although Section 3371.2 of the California Code of Regulations gives CDCR the power to calculate and apply credit, it doesn't give them the power to determine credit rate, which is a function of the sentence. It automatically follows from the sentence. Otherwise, it would be almost like giving CDCR substantive sentencing power. So what is, I think you cited a case, Navarro, but I didn't think it said anything about good time credits. So do you have any case that supports what you just said about the sentencing court having the authority rather than CDCR? The sentencing court has the authority to give pre-sentence credits under Section 4019 of the California Penal Code, and they have the authority to determine the sentence based on separation of powers principles. It's their responsibility to determine the underlying question that good time credits necessarily follow from. So it's like first principles that we should be looking at to figure out that the sentencing trial court had the authority rather than CDCR. They had the authority to determine that sentence, and then in Section 3043 of the California Code, we see that if you're convicted of X, you get Y amount of credits. If you're convicted of A, you get B amount of credits. So for CDCR to issue a credit rate inconsistent with the sentence, it isn't just like a math problem of them, you know, just giving a certain different amount of credits. What they're doing is overruling a substantive question of how the criminal law is going to be interpreted and applied to someone. And so what do we do about the habeas court, which was the state court that looked at this and said the CDCR was right? Well, the habeas court was, the habeas court did rule in a two-paragraph decision that Mr. Krause hadn't brought sufficient evidence to show that CDCR was improperly limiting his credit rate, but it didn't address the issue of whether the procedures by which CDCR revoked that rate were sufficient. But we only get to the procedures if he ever had the rate in the first place, and it seems like the habeas court thought he never should have had this rate in the first place. Well, whether he should have had the rate in the first place is a little different conceptually from whether he did have the rate in the first place, which he did, and... Well, this, I guess it's, maybe it's question begging, but we only think he did if we think that the sentencing court's statement has effect, and it seems like the habeas court thought it did not have effect. Well, we can see not just in the sentencing transcripts where the sentencing court did say that, that it was awarding him that rate, but also, for instance, on the minute order prepared with the docket that's on page 20 of the exercise of record, it rules that the earning limitation in section 2933.1 didn't apply. And we also see it on the abstract of judgment, even as late as two years later, it was recording that Mr. Karras had earned credits at the higher rate. Wait, sorry, where do you think there's something that says he actually earned credits at the higher rate? It's on the abstract of judgment, Your Honor. It's on page 20, it's referenced on page 21 of the exercise of record. In the state's motion for judicial notice, it's on page 40 to 41, and we see 300 days of pre-sentence time, sir. Oh, but that's the pre-sentence again. We don't have anything that says that after the sentence, he got 50% rate, do we? No, we don't, but the lowering of the rate itself is a deprivation of liberty. It's a deprivation of that promise by the state that you're going to be released from a certain time, barring the occurrence of certain conditions, like committing misconduct in prison. No, is there any case that says that, I mean, so I think your premise is the pre-sentence rate has to be the same as the post-sentence rate. Is there any case that says that? The pre-sentence rate has to be consistent with the post-sentence rate, and it's a statute, I guess, not a case. It's just that both rates are calculated according to, in section 33.43.1 of the California Code of Regulations, we see these rates being calculated according to the sentence. CDCR can't just give a sentencing rate totally inconsistent with the sentence. It would be acting almost like an appellate tribunal and saying, we think the court made a legal error. We're going to award a rate that's inconsistent with what the court did. If they're going to do that, they need to follow 14th Amendment compliant procedures when doing so. Going back to Judge Piazza's question, if your client got the procedures he wanted, how would he argue that his enhancement wasn't violent such that he would get the lower rate? Mr. Karras might argue, for one, that because he was convicted of causing a great bodily injury, which appears on both the list of serious felonies in section 1192.7 and the list of violent felonies in section 667.5, that, as the judge said, he had classed the kind of great bodily injury that Mr. Karras caused as serious and not violent. He might also argue that CDCR had no authority to lower his rate, that it was necessarily bound by the decision, at least until further process was given that it was bound before doing so. Well, that would be the process, though, right? Once he was arguing that, that would be the process? Yes. And then, yes, he could also argue that it had been classed as a great bodily injury of a serious sort. And also, it's not just that the prosecutor and defense attorney and the judge concluded this at the time when Mr. Karras appealed his conviction to the California Court of Appeal. Although the sentence is modified on grounds that aren't relevant here, it affirmed in all other respects and didn't raise the issue of credits. It remanded, and that abstracted judgment was prepared two years after the sentencing, still reflecting the higher rate. So other actors in the system have concluded otherwise than CDCR believes in this case. Why don't you save the balance of your time? This polite. Thank you. Uh-huh. Thank you. May it please the court, Deputy Attorney General Martha Ehlenbach, appearing for defendants at police. This court should find that Plaintiff Karras has no state law entitlement to earn conduct credit at a higher rate, and regardless, he received the process he was due. Mr. Karras had his day in court. A jury found him guilty of violent felonies, and the state habeas court determined that the California Department of Corrections and Rehabilitation was properly applying the statute that limits credit earning for violent felons. So Mr. Karras's due process claim necessarily fails. So why did the second and third level of review talk about needing to get the records from the court? It seems like they didn't say it doesn't matter what the sentencing court said. I believe there was a note at the second level of review, Your Honor, that indicated that they were going to seek more records, and then there was further review at the final level, and they indicated that the abstract of judgment contradicted, or the sentencing court's order regarding the higher level of conduct credit contradicted the remainder of the abstract of judgment, which was the finding of true that Mr. Karras had inflicted great bodily injury under Section 1202.7, and the finding of guilt with respect to the violent felonies. So are you arguing that he got the process that he was due, or that it wouldn't have mattered? Both, Your Honor. He got the process he was due because he was charged with those violent felonies, and he had the ability to be heard through the criminal proceedings regarding those charges. And the case I would point you to for that is Neal v. Shimoda, which dealt with claims by two plaintiffs that CDCR had violated due process and designated them sex offenders. One of those plaintiffs, Martinez, had gone through criminal proceedings and had been found guilty of a sex offense, and in Neal, this court found that that was sufficient then for CDCR to later apply that label. So I know you think that this didn't happen, but if the first three years after sentencing he had been allocated 50% credits, and he had this pile of credits, and he'd been told that his sentence was going to be shorter as a result, wouldn't you need to have more process than the original conviction to take those away at that point? No, Your Honor, because that's really a recalculation, and it would be essentially the same as if then was indicated in the abstract of judgment and made an administrative statement then correcting their own error. There is no additional process that would need to be done at that point, because it's CDCR's responsibility to calculate those post-sentence conduct credits, and it did that in this case consistent with the abstract of judgment. Let me ask you, what is the law in California when the judge says something on the record orally, and then it later is shown to be inconsistent with something else the Superior Court did? And in that situation, is there a California law that says which governs, the written document or the judge's oral statement? Well, I believe in this case the abstract of judgment did award pre-sentence conduct credit consistent with the judge's oral statement, which was that Mr. Karras was entitled to the additional credits. But that was an error, and that same state court determined that it was an error in the habeas case. So we know that it looked at it, it examined it through the habeas proceeding. But the law is in California that where there's a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. That's People v. Zachary. I don't believe there's that type of discrepancy here, Your Honor. Certainly the state, because the pre-sentence credits were calculated consistent with what the judge orally said, and CDCR then went on to calculate the post-sentence credits pursuant to its own responsibility to do so. So it didn't matter that the trial court said you're going to get a 50 percent rate instead of a 15 percent rate? Not for our purposes here, Your Honor, because we already have that state habeas court finding. Certainly the Department of Corrections could go back under California Code of Regulations Section 3371.1 to request that the trial court correct the pre-sentence conduct discrepancy and remove those pre-sentence credits. But for whatever reason, it has not done so. Those pre-sentence credits are still being applied. And so that part of the sentence continues to be calculated in accordance with what the trial court awarded. What CDCR was doing was essentially determining that going forward, Mr. Karras could not be entitled to that because he was a violent felon. That seems inconsistent with what the superior court said. I'm sorry, Your Honor? I said it seems inconsistent with what the superior court said. The superior court did make an error, but regardless. Can CDC go back to the superior court and say, hey, that statement was incorrect and you need to, we need a clarification that he was convicted of an enhancement that requires a finding of, you know, severe bodily, whatever it is, severe bodily injury or whatever. It could, Your Honor, if it wanted to address the pre-sentence credit issue. But it has independent authority to calculate those pre-sentence credits. Okay, where does that independent authority come from? I would point the court to People v. Buckhalter, which talks about the difference between calculation of pre-sentence and post-sentence credit and the two separate penal code sentencing schemes. First of all, Section 2900.5, and then separately, Sections 2930 to 2936, which are the statutes that provide for the California Department of Corrections to calculate post-sentence credit. So how do you respond to the other side's argument that you can't switch rates from pre-sentence to post-sentence without additional process? Well, for our purposes here, Your Honor, there is no need for additional process because Mr. Karras never had a liberty interest in those credits that he wasn't entitled to. He can't claim that type of interest here when he was not entitled to those credits. And that's the aspect of the habeas court's ruling that we are asking this court to find has issue preclusive effect. Because the habeas court... The habeas court didn't reach the pre-sentence. It said that the government couldn't expand the issues and talk about those. So it didn't really address whether those were correct or not as I read it. That's correct, Your Honor. It did not restore or remove additional pre-sentence credits. But it did make a determination, and this is the aspect that should have issue preclusive effect, that the state was correctly applying the 15% credit limitation and that it could continue doing so. And so you think that means that there's no connection between pre-sentence and post-sentence that has to... You have to stick with the same rate? Not necessarily, Your Honor. Not if the pre-sentence credit is incorrect. It's also unclear, given the habeas court's finding, what the purpose of additional process would be. Mr. Karras has indicated he's not seeking any sort of compensatory damages. And if he had additional notice and an opportunity to be heard, a further court would have to make the same determination as the habeas court did regarding the amount of credit that he had earned. Did you raise this issue on preclusion at the district court? Your Honor, we appeared for the first time on appeal. So it was screened? It was screened. Yes, Your Honor. But there would really be no point to be going back to the district court at this point because the records from the state habeas court are conclusive and they are judicially noticeable. If Your Honors have no further questions, this court should find that Mr. Karras had no due process right to additional credits or any alternative that he received all process he was due. Thank you. Thank you. Thank you, Your Honors. State law requires that CDCR reconcile any sentencing discrepancies that they identify with the court's decisions. That's in Section 3371.1. So it's not just something they could do. It's something that has to happen. And that's exactly the process that we need here and that needs to take place. And it's the process that CDCR began but didn't complete, although, you know, they never got the documents from the court that would clarify exactly how the sentence was to be applied. And without those documents, the process just involves an agency making a decision that it's not empowered to make. So to agree with you, do we have to think that the habeas court got California law wrong? No, because the habeas court didn't rule on the issue of whether Mr. Karras got due process or not. He didn't use the words due process in his habeas petition, nor did it use those words in its complaint. You would be ruling that he's entitled to more under the 14th Amendment, not that the habeas court was wrong about whether the credit earning limitation is being incorrectly applied. But if, again, I guess, if he got the process, if they were right about state law, the process wouldn't really help him because it would just go back to it should be calculated this way. The result of the process might be unfavorable to him, in which case the habeas court, you know, it would line up with what the habeas court said. But without the clarification that was begun here and that is required by state law, state law recognizes that, you know, CDCR, through this legal processing unit, is in contact with the courts about how to apply sentences. Without that, Mr. Karras hasn't received the full measure of the process he's entitled to. There's a case out of the Third Circuit that was cited in the defendant's brief. Let's see if I can find it. I'm just trying to figure out why we shouldn't follow what the Third Circuit did in that case. Are you familiar with that case? Yes, I think so. Evans? Yes, I think so. Let me see if I can find it here. From 2017? Yes. That case is one of a few cases, a few different cases that CDCR cites where a prisoner never actually possessed the higher credit earning rate, where they didn't have what they were later suing had been deprived from them. It's just like a case where, and the reason it's not, Your Honor, is because the, in that case, it wasn't that the credit rate was awarded. It was almost like a ministerial mistake that happened. Someone wrote something down internally. You know, someone just marked a form down wrong. It wasn't that the court ruled that Section 2933.1 didn't apply, as happened here. So that case is just like other cases that's cited in their brief where someone receives a 15% rate at trial. They're told at trial, this is your rate. Then they go into prison, and they get credits at that rate. And then they sue CDCR, and they say, I should be getting more credits. And CDCR, in that case, there's no deprivation of due process because it's consistent with what the court did. And that's unlike this case where it's inconsistent. Thank you. All right. Well, thank you. And, Mr. Von Zyl, thank you for taking on this case. We appreciate the pro bono work that you do, and you did a fine job here today. And, Ms. Ellenbach, thank you for your oral argument presentation. The case of Majid Abid Karas v. California Department of Corrections Rehabilitation is now submitted. Thank you.
judges: MURGUIA, PAEZ, FRIEDLAND